This is a petitory action in which plaintiff seeks to be recognized as owner of a parcel of ground described as follows:
"A certain portion of ground, commencing at a distance of 108 feet from the corner of Jena and Chestnut Streets, and measuring thence two (2) feet front on Jena Street, the same width in the rear, by *West Page 585 
a depth between parallel lines of one hundred twenty feet, lying within the lines between points M, N, O and P indicated in a plan of survey of E.L. Eustis, C.E. and Surveyor, dated February 14, 1938."
She alleges that defendants are in actual possession thereof without color of title.
This suit was originally instituted jointly against W. Ethelbert Brown and his wife, Katie Mohr Brown. W. Ethelbert Brown having died just prior to its filing, his son and sole heir, Frank W. Brown, joined with his mother in opposition to the demands of plaintiff.
For answer defendants admitted their physical possession, deraigning their rights and title thereto, urged a plea of estoppel, the prescription of ten years acquirendi causa, and, in the alternative, pleaded the prescription of ten years relative to the acquisition of a continuous and apparent servitude, the latter under the provisions of Article 765 of the Civil Code.
After a trial on the merits, there was judgment overruling the pleas of estoppel and prescription and recognizing plaintiff as the true and lawful owner of the parcel of ground herein involved. Defendants have appealed.
The record shows that both plaintiff and defendants deraign their titles to a common author, Mary E. Finnerty, who, on April 15, 1921, acquired a tract of land measuring one hundred and sixty feet front on Jena Street by a depth of one hundred and twenty feet. She divided the property into five lots, each of thirty-two feet frontage by the full depth acquired, and which are described on the original Eustis plan as "B", "C", "D", "E" and "F" respectively. To make the lots more attractive to prospective purchasers, she decided to increase the frontage of the lots to be sold, and accordingly, on May 14, 1921, she sold to I.F. Freret the whole of lot "F", plus eight feet of lot "E", thus leaving twenty-four feet remaining in lot "E" as originally formed. On August 29, 1921, she sold to Vincent Mascari, from whom plaintiff deraigns her title, twenty-two feet of lot "E" and eighteen feet of lot "D". It is thus observed that, though there remained twenty-four feet in lot "E" as a result of the first sale mentioned, the deed to Mascari called for twenty-two feet. On March 9, 1922, she sold to the defendant, Mrs. Brown, sixteen feet of lot "D" and twenty-four feet of lot "C". Since lot "D" had a frontage of only thirty-two feet, she actually sold a frontage in that lot of thirty-four feet, or, in other words, sold two feet of that lot twice, conveying eighteen feet to Mascari and sixteen feet to Mrs. Brown. From this error in executing over-lapping titles results this controversy.
An action of boundary between the same parties was recently before us. Franz v. Mohr, La.App., 186 So. 114. Therein we decreed the boundary line of Miss Franz, adjoining that of Mrs. Brown, to include the parcel of ground here involved. The former's title being the most ancient, we concluded, and we believe correctly, that the quantity of land called for by her title must first he satisfied. Though defendant in that instance had pleaded the prescription of ten years, we held that, under Article 847 of the Civil Code, the prescription of thirty years alone was contemplated, and we declared that a petitory action was necessary to vindicate the conflicting titles, at which time the merits of the plea of ten years' prescription, if renewed, could be determined. This petitory action followed.
The evidence discloses that shortly after his purchase, Mascari built thereon a home and garage, one side of the garage being flush with the 18-foot line in lot "D" called for in his title. Defendants having subsequently acquired sixteen feet frontage in lot "D", then discovered that the garage in question encroached a distance of two feet within the line of measurement called for by their title. Thereupon defendants made demands for removal of this encroachment, undoubtedly without success, for it is shown that, on February 28, 1923, they brought suit to be recognized as owners of the area called for by their title. No trial was had on the merits, judgment being rendered rejecting the demands made. It is not amiss to say that the judgment as rendered was the result of an oral agreement had between these present defendants and their author in title, Miss Finnerty. Though we readily concede that agreements orally entered into cannot serve as evidence of title to realty, the evidence before us shows that these present defendants, from the date of their purchase, persisted in demanding a full and complete delivery of the measurements called for by their title. It further shows that it was only after their author in title had orally promised to complete *West Page 586 
their title, followed by judgment dismissing the suit referred to, that we find Miss Finnerty re-acquiring the lot previously sold to Mascari. The record discloses that, on June 18, 1923, Mascari sold the lot he had acquired to the Dixie Homestead Association and, on the same date, it was in turn purchased by Miss Finnerty. Thereupon, in August, 1923, the garage, as constructed, was removed to the Brown lot and the possession of the two-foot strip in question was then ceded and delivered to defendants by the then owner, Miss Finnerty. It is further shown that, immediately thereafter, defendants constructed a seven-board fence, sixty feet in length, running along the line of their property as called for by their title, though not extending along its full depth. In the year 1933, this fence was reconstructed along the same location, at the joint expense of defendants and the Dixie Homestead Association, the latter then owning the lot presently owned by plaintiff.
The evidence further shows that, on May 17, 1933, plaintiff purchased from Leonard J. Franz the lot originally purchased by Mascari.
Being convinced that defendants' plea of prescription of ten years acquirendi causa is decisive of the issues presented, we are relieved of the necessity of determining the additional pleas urged.
To acquire ownership of immovables by the prescription of ten years, four conditions must concur, to-wit:
(1) Good faith on the part of the possessor. Revised Civil Code Articles 3451, 3479 and 3480.
(2) A title translative of property. Revised Civil Code Articles 3474, 3478, 3479, 3483 and 3486.
(3) Possession accompanied by the following incidents:
(a) As owner — when it shall be sufficient to complete actual possession once begun by the civil possession provided the civil possession be preceded by corporeal possession. Revised Civil Code Article 3487, and,
(b) The possession shall be continuous and uninterrupted, peaceable, public and unequivocal; clandestine possession will not suffice. Revised Civil Code Article 3487.
(4) An object which may be acquired by possession. Revised Civil Code Article 3479.
It is our opinion that all four of these conditions concur in this case. Defendants acquired a city lot by a deed regular in form, passed before a notary public and two witnesses, signed by the vendor and vendee, describing the property conveyed by definite and fixed measurements, the sale being made under full and complete warranty of title, with an expressed consideration, and duly recorded. A "just title" being called in law "a legal and transferable title of ownership in the possessor" (Article 3478 Revised Civil Code, et seq.), unquestionably defendants acquired the property by "just title", as defined.
It is proved beyond question that, immediately following their purchase, defendants demanded of their vendor a full and complete delivery of the measurements called for by their title, the adjoining owner, Mascari, being then in possession of the two-foot parcel here involved. It is conclusively shown that defendants' vendor, recognizing the validity of this demand, and desirous of correcting the error she had committed in selling over-lapping titles, on June 18, 1923, re-purchased the property formerly acquired by Mascari. Thereupon she ceded and delivered to defendants the two-foot parcel, thus consummating defendants' title. It is amply shown that defendants then took actual possession of the strip in question, moving the garage onto their property, and, in August, 1923, constructed a fence along the line fixed by their deed. This fence extended a distance of sixty feet, running from the garage to the rear of defendants' kitchen. It is also proven that, in the early part of 1933, a new fence was constructed in the same location at the joint expense of defendants and the Dixie Homestead Association, the latter then owning the original Mascari lot, and from whom plaintiff subsequently purchased. This fence extended practically the entire depth of defendants' property and is presently existing.
The evidence clearly establishes that defendants have been in physical and corporeal possession of the parcel of ground in question since August, 1923, a possession open and public, continuous and undisturbed, up to the filing of this suit on March 16, 1939. They constructed a home on the lot purchased by them, built a fence on each side fixing the limits of their property, and exercised complete dominion over the entire enclosure with the positive and affirmative intention to possess as *West Page 587 
owners to and within the full extent of their title. We are firmly convinced of the good faith of defendants in exercising possession within these limits.
Article 3451 of the Civil Code, which is found in the chapter which treats of possession, reads as follows:
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
Undoubtedly, having purchased property by a "just title", which called for definite limits, and having taken possession of the area within these fixed measurements, it cannot be seriously urged that they did not have just reason to believe themselves the masters of the thing they possessed.
Plaintiff argues that defendants were in bad faith when their possession began because of the suit filed by them in 1923 seeking the recovery of the identical strip here involved and in which judgment was rendered rejecting their demands. Though judgment was rendered as stated, we are satisfied that this was as a result of an agreement in which the demands of defendants would be complied with. That such a compliance was fulfilled is made evident by defendants' vendor re-acquiring the contested strip and the delivery thereof to defendants, followed by their actual occupancy to this date. Having constantly demanded of their vendor a complete delivery of the area called for by their title, and having taken possession of that which they actually purchased, unquestionably their good faith in so doing is a self-evident fact. The question of good faith on the part of the person pleading the prescription of ten years is always a question of fact to he determined by the circumstances of the particular case. In matters of prescription, good faith is always presumed, and the burden of proof rests upon the party alleging bad faith. Revised Civil Code Article 3481.
Plaintiff further argues that defendants were in bad faith when they purchased the property because they could have discovered, by an examination of the conveyance records, that their author in title had previously sold the two-foot strip in question to Mascari. If no one could invoke successfully the prescription of ten years who could have discovered, by an examination of the public records before buying the property, that the seller had no title, the plea would never be available, because no one could invoke it except one having a valid title and having, therefore, no need for the prescription.
In the case of Delouche v. Rosenthal, 143 La. 581, 586, 78 So. 970, 972, it was said:
"Bad faith is not to be imputed to a purchaser merely because an examination of the records would have disclosed a defect in the vendor's title. What is meant by a deed valid in form, or prima facie translative of property, is one that has no defect apparent upon its face. Pattison v. Maloney, 38 La.Ann. 885; Heirs of Ford v. Mills Phillips, 46 La.Ann. [331], 339, 14 So. 845; Guarantee Trust [ Safe Deposit] Co. v. [E.C.] Drew Inv. Co., 107 La. [251], 252, 31 So. 736; Blair v. Dwyer, 110 La. [332], 337, 34 So. 464."
This doctrine was re-announced in Land Development Company v. Schulz, 169 La. 1, 2, 124 So. 125.
Our conclusion is that defendants' plea of prescription of ten years is well taken and should have been sustained. They have held possession, under a just title, in good faith, for more than the required ten years.
For the reasons assigned, the judgment appealed from is reversed and set aside, and it is now ordered that plaintiff's demands be rejected and that her suit be dismissed at her cost.
Reversed. *West Page 588