DORÉ, Judge.
This suit has already been before the Supreme Court on three occasions, the first two being on motion to dismiss plaintiff’s, appeal, see 215 La. 109, 39 So.2d 840, and 216 La. 190, 43 So.2d 262; and the last occasion on the merits, see 218 La. 789, 51 So.2d 71, when the Supreme Court held it lacked jurisdiction of the subject matter and transferred the case to this Court.
The action is in the nature of a petitory action to determine the ownership of a certain triangular tract, approximately one ar-pent in area, lying either within plaintiff’s eastern boundary or the defendants’ western ■boundary lines, as will be more fully explained by reference to plats below. Plaintiff alleged that the" defendants physically occupied the land in question from 1940, when they in bad faith erected a fence west of their own boundary line and on plaintiff’s land, up until the filing of plaintiff's suit in 1947. He further alleged that Oscar Curette had in 1946 erected a wooden saloon building upon the disputed property. Plaintiff prayed that he be decreed owner of the property in question, receive a reasonable rental for defendant’s use thereof, that the defendant Oscar Curette be ordered at his expense to remove the wooden saloon building situated on plaintiff’s property, and further prayed for certain damages arising out of plaintiff’s alleged wrongful arrest and imprisonment when plaintiff had built a fence on the eastern boundary line according to plaintiff’s survey (which defendant, Oscar Curette, had claimed was a criminal trespass upon his own property).
Defendants, *$iter filing an exception of misjoinder of parties defendant which was overruled by the trial court (and which is not urged here), filed a joint answer, in effect claiming that they are the lawful owners of the tracts in question, that the fence (built by them allegedly in 1933) was on their western boundary line as determined by various'surveys, and that if any-error was committed in the survey of the line forming their western and plaintiff’s eastern boundary’line, such error was cured by the possession maintained by defendants for a period in excess of ten (10) years as provided by Article 853 of the Civil Code, defendants’ further in the alternative claiming the benefit of the prescription of ten (10) .years provided for in Article 3478 of the Civil Code. Defendants had also averred that their title from the common author, Joseph Durio, is more ancient than that of the plaintiff herein, and that therefore should there be any discrepancy in the acreages of either, under Article 847 of the Civil Code defendants must be given the preference.
The trial court, in his written reasons assigned, held that the plaintiff failed to make out his title, and furthermore found, in aid of the pleas of prescription contained in de *252 fendant’s answer, that the defendants had been in actual physical possession of the land since 1931 under title translative of property. From the judgment in favor of defendants, dismissing plaintiff’s suit at his cost, the latter appealed.
It is now well established that in a petitory action the plaintiff must recover on the strength of his title and not upon the weakness of his adversary’s title.
Tb understand and explain the father complicated factual picture, the Court has found it desirable to refer to the four following plats of property in the north half of Section 26, T-4-S, R-5-E, La. Mer., St. Landry Parish introduced in evidence:
Plat 1. Plat by M. J; Goudeau, Nov. 10, 26. (Exhibit Z.) 1930, of entire north half of said Section

Elat 2. Plat by R. M. Hollier, December 15,1933. (Exhibit B.)

*253

*254 The disputed tract is indicated on plats 3 and 4 by the triangle PQR.
On November 4, 1916, one Joseph Durio acquired the entire north half of Section 26, T-4 — S, R-S-E, La. Mer., in St. Landry Parish, containing approximately 31S.42 acres, and including the property subsequently -acquired by both plaintiff and defendants. By plat 1 above, M. J. Goudeau, November 10, 1930, surveyed this half section, dividing the northeast quarter into three lots as noted thereon above. On January 21, 1931, Joseph Durio. sold to Oscar Curette Lot #3 per said survey, which was described as follows: “A certain tract or parcel of land, together with all the buildings and improvements thereon and located near Palmetto, St. Landry Parish, State of Louisiana, containing sixty and 8/100 (60.8) acres, and lying in Section 26 Township 4 South, Range 5 East, and designated as Lot No. 3 of a plat of survey made by M. J. Goudeau, Jr., Civil Engineer and Surveyor, attached to and made part of Original Act No. 124943, dated November 10, 1930, and recorded in Conveyance Book ‘W No. 5, page 532 (the act referred to is the act of sale of Joseph Durio to Cliff Durio referred to above), and bounded as follows: On the north by property of Oscar Moore, or Lot No. 2 of said plat, on the south by property now or formerly belonging to T. L. Mitchell, Isaac Lemon and Alfred Curetta or Qurette, on the east by property belonging to Brewer-Niensted Lumber Co., and on the West by Public Road, or property of Vendor.” (Italics ours.) (Thereafter, the exact date not being shown, Oscar Curette sold the northern twenty acres of the said property to Jack Curette.)
In December 1933 by plat 2 above, R. M. Hollier surveyed and platted the portion of the northwest quarter of Section 26 lying east of the LeBeau-Krotz Springs highway dividing it into the three lots shown there.
Subsequently, by mesne conveyances, plaintiff became the owner of Lot “C” of said plat, described as: “A certain tract or parcel of land, together with all buildings and improvements thereon, located near the Village of Palmetto, St. Landry Parish, State of Louisiana, and lying in Section No. 26, T-4-S, R-5-E, .containing Seven and 83/100 (7.83) acres, designated as Lot ‘C’ of a certain plat of survey attached to and forming a part of Original Act of Sale No. 136989 wherein said vendor, Joseph Durio, sells on the same date of this sale, a certain tract of land to Joseph Rideau, Jr., (from the. following description, this tract is ‘Lot A’ of the plat), the property conveyed being bounded as follows: On the north by other property of vendor, Joseph Durio, on the south by said property coming to a point and also by the hereinafter mentioned highway, on the east by property of Oscar Curette, and on the west by the Le-Beau-Krotz Springs Highway.” (Italics ours.)
On May 9, 1947, prior to filing of the present suit, plaintiff employed Mr. M. J. Goudeau, Jr., C. E. and Surveyor, to survey the property in question, which survey (Plat No. 3) was introduced in evidence as Exhibit “A”. After suit was filed, defendants employed Mr. Frank Roberts, C. E. and Surveyor, to survey the area, which survey was introduced in evidence (Plat No. 4).
From the above and foregoing instruments and plats, it can be stated that plaintiff and defendants deraign their title from a common author. In such a case, “the preference shall be given to him. whose title is of the most ancient date, unless an adverse possession, for a time sufficient to establish prescription, has produced a difference in the situation of the parties.” Civil Code, Art. 847. But the phrase “unless an adverse possession, for a time sufficient to establish prescription” is applicable only to the prescription of thirty years. See Keller v. Shelmire, 42 La.Ann. 323, 7 So. 587, Davis v. Moore, 156 La. 488, 100 So. 691 and Franz v. Mohr, La.App., 186 So. 114.
Since the defendants’ title is of the most ancient date, their acreage must first be satisfied and their property established or delivered. However, they cannot ac *255 quire any property beyond their title. In ascertaining whether or not defendants have received the acreage sold to them by their vendor reference must be made to Plat “1” or Exhibit “Z”, and the testimony of the surveyor who. surveyed the ¡property and platted the same. We have the testimony of Mr. M. J. Goudeau, Jr.
Mr. Goudeau testified that he had surveyed the north one-half of section 26 for Joseph Durio in 1930, and again in 1947. He was certain that his 1930 survey was correct save the northwest corner point of defendants’ property, which he places some eight feet to the west of his former corner, alleging the error to be due to the terrain of 1930. From the'later 'corner, he ran south 998 feet, to the center of the section. According to his testimony, the defendants’ present tracts contain 60.8 acres, which together with the other tracts in the north half of section 26 according to Goudeau’s measurements adds up to the exact acreage as determined by the government survey of 318.42 acres. Goudeau further testified that at the- time of the survey of 1930, the LeBeau-Krotz Springs Road was neither under construction nor built, and that the southwest corner of Curette’s property was the center of Section 26. It may be proper to state that there is no evidence to the contrary.
With reference to “Exhibit A” or plat #3 -of this opinion, Mr. Goudeau testified that he started from the recognized iron stake forming the northwest corner of the Curette tract and ran a line west to the intersection of the LeBeau-Krotz Springs Road, a distance of 749 feet; from the iron stake forming the northwest corner of the Curette tract, he ran a line south to the center of Section 26, a distance of 998 feet; from the point of the intersection of the north line of the Charlie Nash property with the LeBeau-Krotz Springs Highway he ran a line in a southeasterly direction to a point intersecting the north and south line of the Curette tract, a distance of 1233.2 feet, some 21 feet to the north of the center of section 26, and computed that area as composing 8.42 acres. (He does not give the measurements between the Curette line and the intersection of the' fence line with the LeBeau-Krotz Springs Highway, nor the distance of the fence from the center of Section 26, nor from the west line of Curette as established by him.)
With reference to “Exhibit D or E”, plat #4 of this opinion, we have the testimony of Mr. Frank Robert, a civil engineer and surveyor of some forty years’ experience. Mr. Roberts testified that he checked the Goudeau survey. He followed the distance as given on the government survey for the east side of Section 26. He started at the iron stake at the northeast corner of the Curette tract and ran a line south a distance of 993.4 feet, contending that this was the residue of the east line of the quarter section; he then ran west a distance of 2653 feet, which checked with the iron stake of Goudeau at the northwest corner; he explains that in order to give Curette 60.8 acres in his tract, he, the surveyor, had to go 13.8' further west than the Goudeau stake at the northwest corner for thé reason that Goudeau had measured 998 feet for the east and west side of1 the Curette property; he thereby places the northwest and southwest corners some 13.8 feet to the west of Goudeau’s corners. He established these corners “on paper only”; he did not establish it on the ground; he did not put any stakes on the ground, nor did he testify as to verification of his survey.
We may state at this time that we are more impressed by the testimony of Gou-deau, in that Goudeau surveyed this property in 1930, presumably from government field notes; nevertheless, in 1947 he verified his survey of 1930, by again running the several lines both north, east, south and west. Goudeau states that in so doing, he came upon the other lines that he had established and that none of his surveys took in any property in the south half of Section 26. Roberts says that in order to give Curette 60.8 acres, in accordance with Goudeau’s survey, Goudeau would have to encroach upon the south half of the- section *256 in that section was a short section. In that we believe- him to be in error; in ac-: cordance with Goudeau’s survey, the east line of north half of Section 26 is 2640 feet or one-half mile. According to both engineers, the government map calls for 318.42 acres in the north -one-half of the said section. We are not favored with the government map, but Goudeau seems to be certain that he ran the east line in accordance with the government survey, save that his east line is three (3) feet longer and he satisfactorily explains the difference. We may also say that the testimony of Robert is somewhat weakened by Mr. Tros-clair who helped Mr. Robert in his survey. Trosclair acted as chainman. Trosclair testified that Robert verified Goudeau’s survey and the stakes that Goudeau had set ; that Robert did not put down any stakes; that Robert did state that Goudeau’s survey was correct and Goudeau had correctly set the dividing line between the property of Nash and the Curettes.
As to Exhibit “B”. or plat #2 by Mr. Hóllier of this opinion, it is unfortunate that Mr. Hollier was deceased as of the trial of the case. - While in certain instances this plat corroborates Mr. Goú-deau’s plats 1 and 3 (e. g., the west line of the northeast quarter is 2640 feet in all three plats, the southwest corner of the Curette property is the center of section 26 in all three plats), yet there are also certain discrepancies which must be resolved in favor of the most ancient survey, the 1930 Goudeau survey. We find little help in this map in determining the proper and correct boundary line between the properties of plaintiff and defendants.
All things considered concerning the maps and testimony' of the civil engineers and surveyors, we are -of the opinion that the Goudeau plats (Plats No. 1 - and 3 above) should be controlling, and that the dividing line between the properties of plaintiff and defendants should be fixed in accordance therewith. The east' line of the property in question should be held to be that established by the Goudeau plat #3,. which establishes the western boundary of defendants’ property. By so doing, the defendants Curettes own: and possess 60.8 acres according to their original purchase outside and beyond the. piece of property in controversy. .
.We fully realize that in accordance with Goudeau’s survey and .plat, plaintiff gains some 59/100 acres; but since the Curettes were to be satisfied first out of the property purchased by plaintiff Nash if there had been any deficiency. in the Curette acreage, and Nash would have received only the remainder of Lot “C” whether equal in acreage to his purchase or not, Nash stood to lose as well as gain by the rules of law followed.
The evidence is conclusive that the triangular shaped piece of property in question is west of the boundary line as established by the .Goudeau surveys, and that the fence and wooden building of defendants are situated west of said boundary line and therefore on plaintiff’s property. However, while we are of the conclusion that plaintiff has borne the burden of proof in establishing his ownership of the triangular piece of property in contest, we find ourselves unable to give a definite description thereof, since nowhere in the record supplied is such a description by dimensions and angles or other descriptive data. It will .therefore be necessary to remand the case to the trial court in order that a definite description of the property be ascertained and given for purposes of an appropriate decree declaring plaintiff to be the owner thereof.
We. might observe in passing that while the evidence is conflicting as to whether the fence built by the Curettes was built in 1933 or 1940, we feel it immaterial to the determination of this suit, since the defendants could acquire the contested property only by prescription of thirty years following either their acquisition date of 1931 or the alleged fence building in 1933. (Suit was filed in 1947 by plaintiff.) . While apparently defendants and the trial court considered the prescriptive period of ten years applicable under Civil Code Article 3478 and also under Civil Code Article 847, we have determined that the prescriptive period applicable under Civil *257 Code Article 847 to be that of thirty years. We do not find Article 3478 and related questions of good or bad faith applicable, since the sale from Joseph Durio to Oscar Curette is not one per aversionem, but the sale of a certain designated lot of definite acreage, after a survey and plat thereof. The property at that time was woodland and if, within two years of Goudeau’s survey, Curette mistakenly built a fence and thirty years have not expired, he can take nothing by his mistake.
We might also observe that' we affirm the trial judge’s ruling that evidence as to damages to plaintiff for wrongful imprisonment is not admissible in this action. The plaintiff has cumulated two actions in this suit, and the action for damages has no causal connection with the petitory action.
Plaintiff also prayed that the defendant, Oscar Curette, be ordered at his expense to remove the wooden building situated on plaintiff’s property, and that the defendants be ordered to remove at their expense their fence, and we believe the final decree in this action should order relief consonant with this prayer.
Plaintiff further prayed for a fair and reasonable rental value of the property enclosed by defendant; however, there is no evidence in the record as to such fair rental. We accordingly feel that the trial court should on remand of this case determine such fair and reasonable rental, and award the plaintiff such fair rental of the property enclosed by the Curettes from judicial demand until his possession is restored to him.
For these reasons assigned, it is ordered that the judgment appealed from is reversed, annulled, and set aside, and it is now ordered that this case be and it is hereby remanded to the 27th Judicial District Court for the Parish of St. Landry, there to be proceeded with in accordance with the views herein expressed. Defendants to pay the costs of this appeal, all other costs to await the final determination of the case.