ELLIS, Judge. ■
Plaintiff has .alleged that he is the owner and in possession of the following described property situated in the City of Bogalusa, Parish of Washington, Louisiana:
“One lot or parcel of land in Sections 11 and 14, Tp. 3, S. R. 13 East described as follows, to-wit: Starting where east line of NOGN right of way intersects the north line of John Dur-dino Headright No. 46; thence North 14 deg. 15' East along -right of way 209 feet; thence East parallel to north line of headright 46-30 feet to the point of beginning thence continue east 65.7 feet; thence north 0 deg. 15'-West 209 feet to stob; thence west parallel to north line of Headright 12.6 feet to east line of a 30 foot street; thence south 14 deg. 15' West 215.8 feet to the point of beginning.”
Plaintiff then set forth his title through the various authors to one Monroe Morris on May 2, 1929, which title he alleged was confirmed and ratified by - Monroe Morris and Claude Morris to Herbert Powe, one of his-authors in title, on the 15th day of July, 1929. Plaintiff further alleged that the defendant “acquired a tract of land east of and contiguous to the said land of your petitioner, by deed from Robert M. Banister, dated Feb. 5, 1945, recorded in C.B. 97 p. 457,’ in 'which said deed the property which said Andrew Otis claims to have acquired -is described as follows:
“A certain lot or parcel of land in Sections 11 and 14 Tp. 3 S. R. 13 East described as follows: Starting where north line of John Durdine H.R. 46 intersects east line of the NOGN right of way, thence north 14 deg. 15 min. East along said right of way-209 feet; thence run east 73.7 feet to the point of beginning; thence continue east 122 feet; thence north 209 feet; - thence west 122 feet, thence south 209 feet to the point of beginning, being same property acquired by Robert M. Banister from Monroe Morris, May 26, 1941, per deed recorded in C.B. 87, p. 23, as will be more fully shown by a certified copy of said deed annexed hereto and made a part hereof.”
Plaintiff next alleges that the description by which the defendant acquired from Banister aforesaid overlaps the description in the deed by which he acquired his property “long prior to the time said Otis acquired the property described in the deed from Banister to Otis as aforesaid: that the title of petitioner and the title of said Otis runs back to a common author, namely; Monroe Morris, and the title of petitioner and his authors in title antedates and primes the title of said Andrew Otis.”,
Plaintiff then alleged that the boundary between the two tracts had never been correctly fixed, and established and that he desired “to have said boundary fixed in accordance wtih his title * * * ”, but that the said defendant refused to agree upon a boundary line and it is, necessary that it be fixed by judgment of the Court and at the cost of the' defendant.
Plaintiff then prayed for the appointment of a duly qualified surveyor “to inspect the premises aforesaid and make a survey of the two tracts with special reference to the-overlapping description , in the deeds- * * * ”, and accordingly that the formalities of the law be complied with and the boundary be fixed in accordance with the description and deed of plaintiff and-order— *119 ing the defendant to pay all costs of the suit.
In accordance with the order of the court a surveyor was duly appointed and after complying with all the formalities of the law he made his return to the court and we have in the record two maps identically the same. One is made according to the Plaintiff’s description and one according to the defendant’s description' showing an overlap of 22 feet. In other words, the plaintiff’s title calls for 22 feet of the property described under the defendant’s deed, and vice versa.
Defendant filed answer in which he set up ownership and actual physical possession of the property, heretofore fully described in considering plaintiff’s petition and he de-raigned his title through various authors back to November-16, 1920. He alleged that the boundary line between his property and plaintiff’s had been established many times and further,- that he and his predecessors'in title “have been in actual, continual and physical possession of said property as described in Articlé I of this answer for a period of more than 30 years * * * ” and therefore invoked the thirty year prescription. He next plead the prescription of 10 years under Article 3478 et seq. of the LSA-Civil Code.
On December 3, 19S2, prior to .trial but after the answer was filed, defendant filed an exception of no cause of action and also an exception of no -right of action, both of which were overruled by the trial court, based upon the proposition that the titles to the property must first be adjudicated before the boundary could be determined. In other words, if we accept the plaintiff’s title there is no dispute about where the boundary would be. If we accept the defendant’s title there would -be no dispute. He argues that once the Court decides who has the title to the twenty-two feet then any surveyor could fix the boundary or they would not need a surveyor as all parties agree as to where the boundary would be in any event.
While there is merit in defendant’s contention, we will accept the allegations of the petition as containing a suit for settlement of boundary! . ! .
We affirm the ruling of the District Judge on the exceptions.
The case was drily tried and with written reasons judgment was rendered in favor of the plaintiff approving and homologating the survey in accordance with the plaintiff’s description, which, in effect, would mean that the twenty-two feet belonged to the plaintiff rather than the defendant. From this judgment defendant has appealed.
The learned judge of the District Court based his judgment upon Article 847-of the LSA-Civil Code and found as a fact that the parties herein acquired their property from one common proprietor and “that the plaintiff’s title is the .most ancient, then the plaintiff must be given the preference, and the boundary line fixed in conformity with his title, if the defendant has not shown an adverse possession for a sufficient time to establish préscription. It is true that the defendant' has shown a probable possession of a part of the property in;dispute, but this is for a- much less time than thirty years, and consequently, the limited possession can avail the defendant nothing.”
The District -Court further stated:
“The defendant in brief has re-u.rged his exception of no- cause and no right of action, predicated on the proposition before the . boundary between these properties can be fixed, the title to the land.must be adjudicated. He points out there are two full and complete descriptions, and on the face of ea.ch deed there is.no error which,results ip an overlapping qf the property, giving to each party title to the 22 feet strip in dispute. It is true that the properties do overlap and the deeds do give to e.ach of the parties the 22 foot strip in dispute, but it must be remembered that these parties have a common author in title, and the plaintiff has not prayed herein to be decreed the owner qf this property, he has simply prayed that the Coprt fix the boundary line between the two contiguous tracts, and I *120 am of the opinion that the plaintiff is entitled to this relief under the plain provisions of Article #847 of the Revised Civil Code, supra. In an action of boundary questions of ownership are not at issue and the titles are referred to. only to establish the boundary and not to effect the ownership. Keller v. Shelmire, 42 La.App. 323, 7 So. 587.”
Thus we see that the lower court held that the plaintiff had the more ancient title and was'entitled to preference and that the defendant’s plea of 10 years prescription could not be considered under the authority of Keller v. Shelmire, supra.
There are two questions which this court must dispose of: (1) if this is a suit for the establishment of a boundary, can the defendant plead the prescription of 10 years under Articles 3478-3498, LSA-C.C.; (2) does the plaintiff or the defendant have the more ancient title.
Although the petition in this case is drawn to fit an action of boundary, counsel for plaintiff in brief submitted to the trial court on an exception of no right or cause of action stated:
“In this case the surveyor has reported two boundaries as according to the title papers, and he has so reported to the court. It is now up to the court to decide which of these descriptions shall constitute the boundary between the land of Collett and the land of Otis. This is not trying title to the strip in dispute, but is merely fixing the boundary according to the title running back to a common author. If the court should fix the boundary in accordance with the description in plaintiff’s title, the defendant would not be precluded from bringing an appropriate action to test the title to the strip of land, however, in every action of boundary there must be in some measure, at least, an adjudication of a question which might effect title. To hold otherwise would mean that, as is the case in every boundary action, the court could never fix a boundary if both parties claimed to own up to over-lapping lines7’ ■
Counsel, therefore, recognizes the impossibility of deciding this case without an examination of the titles, however, he argues that the fixing of the boundary as claimed by the plaintiff would not preclude the defendant from bringing' a petitory action to test the title, in other words, it is his contention that even though defendant might have a good title under his plea of prescription of ten years it could not be considered in this case but must await a separate suit by the defendant to test the title. While this has been held, it appears to be erroneous under both Articles 847, and 3478-3499, LSA-C.C., as well as prior jurisprudence which will be discussed in connection with this statement.
Article 847 of the Civil Code reads as. follows:
“Conflicting titles from one common proprietor — If the parties claim under simple acts of sale or other acts which, can transfer property, without being: supported by any anterior concessions, and if they, or the persons from whom they acquired their .estates, have acquired them from one common proprietor, the preference shall be given to him whose title is of the most ancient date, unless an adverse possession, for a time sufficient to establish prescription, has produced a difference in the• situation of the parties.” (Emphasis, added.)
There is, of course, no argument that under the plea of ten years acquisitive prescription when the requirements of the law have been satisfied an owner claiming thereunder acquires the property to the bounds fixed by his title. A boundary under the ten years prescription may be acquired adversely just as one may be acquired adversely under the prescription of thirty years under Article 3499 and Article 852 of the LSA-Civil Code, both of which refer to possession of land beyond the limits of one’s title.
The case relied, upon for the holding that the adverse possession referred to in Article 847, LSA-C.C., means only the thirty years possession was Keller v. Shelmire, 7 So. 587.
*121 It is to be noted from a mere reading of Article 847, LSA-C.C.,' that the adverse possession referred to in that Article is not by the wording of the article itself limited to thirty years. This article' says that where the parties claim from one common proprietor the preference shall be given to him whose title is of the more ancient'date “unless an adverse possession, for a. time sufficient to establish prescription, has produced a difference in the sittiation of the parties.” (Emphasis added.)
In the Shelmire case, supra [7 So. 588], the Supreme Court of Louisiana through Justice Fenner, stated:
“Although the plaintiff makes some effort to invest this action with the characteristics of the action of jactitation under his petition, converted into the petitory action by the pleading of defendant, it is, in substance, nothing more nor less than an action of boundary regulated by title 5, bk. 2, of the Revised Civil Code. The parties are owners of contiguous estates.. Neither questions the title of the other. The only difference between them is as to the proper boundary line between the two, and that is the only question to be settled in this suit. This eliminates all questions of title, of registry, and of prescription, except the single pre-cription of 30 years, which, though pleaded by plaintiff, has not a shadow of foundation. The question is to be decided according to the actual titles, which neither party is permitted to dispute. Rev. Civil Code, arts. 825, 841, 843, 845, 852; Andrews v. Knox, 10 La.Ann. 604. * * * ”
Thus we see that the plaintiff attempted to file an action of jactitation according to his petition and the defendant by his pleadings converted it into a petitory action but when the case was considered by the Supreme Court it held that it was nothing more nor less than an action of boundary, and it further states that neither party questions the title of the other. The same is not true in this case. Here it is absolutely necessary that the titles be considered, that this court decide whether the plaintiff or the defendant has the better, title.
In the Shelmire, case, supra, the Court went on to say that in view of the fact that neither was questioning the title of the other and that the only difference between them was as to the proper boundary line which, naturally, the court stated (since neither questioned the other’s title) eliminated all questions of title, of registry, and further that, “of prescription, except the single prescription of 30 years, which, though pleaded by plaintiff, has not a shadow of foundation. * * * ” Thus we see in this case that the court considered the 30 years prescription becaus.e it had, been pleaded but it did not say that this was the 'only prescription which could be pleaded as a defense in a boundary suit to the actual establishment and fixing of a definite boundary. Article 847 of the Code was not cited in the Shelmire case for it did not involve a question ,qf which title • should be given preference where acquired through a common ancestor in title. In other words, in that case they did not. even consider any adverse possession referred to under Article 847, LSA-C.C. Therefore it is not authority for a holding that one may not plead ten years prescription as a defense in accordance with Article 847 of the Code.
When the Court in the Shelmire case stated that the case would be decided according to the actual titles which neither party is permitted to dispute,, it, of course, meant under the facts as found in that particular case which are entirely different from the facts in the case at bar.
In Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, 412, the Supreme Court through Chief Justice Nicholls clearly designated the suit as one of boundary, pure and simple. The Court in stating -the facts, issues and specifically the contention of the defendant in his application for writs from an adverse judgment of the Court of Appeal stated:
“ * * * He says that he specially complains that the judgment of the district court is in conflict with the established jurisprudence of the state, which *122 he asserts to be as follows: * * ; and where the 'Contiguous owners hold property under titles from a common author, and one of them has possessed the disputed part for over ten years, under the conditions prescribed in the Revised Civil Code, from articles 3478 to 3498, his title becomes, by legal effect, as absolute and indefeasible, as to that part, as if his deed had included it/ ”
The organ of the Court in the Williams case, supra, then quoted the decision of the Court of Appeal in which the only reference made to the ten years prescriptive plea was: “ * * * There is nothing to show that an adverse possession has produced any difference in plaintiff’s situation, so as to defeat his right 'by. prescription. * * * ”
Thus we see that the question was presented in the District Court; in the Court of Appeal, and passed upon by the Court of Appeal. It did not say that Article 84-7 referred only to a prescription of thirty years. Chief Justice Nicholls in recognizing the prescriptive plea of 10 years under Art. 3478 in this case had the following to say:
“ * ' * ■ * The mere fact that parties owning, adjoining property have culti- ' vated lands up to a certain line; of up to a certain fence, built either by one or both, or built by one and repaired' by the other, does not per se evidence an adverse possession up to the line or fence, of an acquiescence in or recognition of an adverse ownership. Neighbors Constantly run up fences within or beyond .the .-boundary ‘lines; and join their fences; doing so with th.e knowledge and understanding that such-acts are merely temporary, and done sub-sidiarily to,.and with reference -to, the right of both to ultimately ascertain and fix, rights by an action of boundary, or through a formal, legal survey. .Until this happens, the lands held by each are in the occupancy, and not in the adverse possession, of either, — certainly so in the absence df a clear and direct claim advanced' of adverse ownership and possession. In the absence of such a claim, the other party is justified, inasmuch as matters as to boundary are resting in abeyance, subject to future adjustment through an action of boundary. There can be no question as to the correctness of the judgment in dealing with the original rights of the parties, as derived by each through their vendor. Both claim under a common author, Plaintiff was the first purchaser, under a title calling for the government lines as the boundary lines. Defendant purchased subsequently a certain number of acres of land, as per a certain survey referred to; this act declaring, however, that the property purchased was bounded by the plaintiff’s land. There can be no doubt as to the right of a person owning adjoining properties, acquired by him under separate and distinct titles, to ignore the original division lines, and to dispose of' his property according to new and arbitrary .lines; but, if he has sold to one by the original lines, he cannot thereafter sell to another' by a new and arbitrary line, to the prejudice of the rights and boundaries conveyed, to his first vendor. His act in so doing would be null and void, as an attempted sale of another personas property. We understand relator to say that, whether or not his'vendor had the legal right to sell to him as she did, she did in point of fact sell, and his subsequent possession was not over and beyond the title as made to, him, which would require a prescription of 30 years to acquire ownership, but in strict conformity with, and to the full limits of, the title given him, which would require only a prescription'of 10 years to acquire tide ownership of anything which his vendor was not legally entitled to convey to him. We think that holding, as he did, by purchase, property adjoining to that already conveyed to the plaintiff by a common author, he cannot claim to have held any portion of the property actually owned by the plaintiff by adverse possession, in the absence of a clear and distinct advanced claim of *123 adverse ownership of that portion. Plaintiff would have the right to assume that defendant’s possession, if such it could be termed, was by sufferance, precarious, and subsidiary to the adjustment of the exact legal rights of the parties, to be ultimately ascertained and fixed by an action of boundary. * * * ” (Emphasis added.)
The case of Davis v. Moore, 156 La. 488, 100 So. 691, 692, which was an action' to establish boundary between adjacent'property owners, stated:
“ * * * In an action of boundary, the questions of title are not at"issue, unless' founded ori the prescription of 30 years, and titles are referred to only to establish boundaries and not as affecting ownership. Keller v. Shelmire, 42 La.Ann. 323, 7 So. 587. * * * ”
Thus, the Supreme Court, relying on Keller v. Shelmire, supra, apparently but not specifically excluded a flea of ten years acquisitive prescription in ’ an action ' of boundary, however, the question was not squarely presented and the statement was in the nature of obiter dicta.
The case of Franz v. Mohr, 186 So. 114, 116, decided by our brethren of the Orleans Court of Appeal, wás án action in boundary in which it was stated:
“Since it clearly appears that plaintiff has the most ancient title from a common author, the quantity of land mentioned in her title must be satisfied ‘unless an adverse possession, for a time sufficient to establish prescription’ has been proven. Defendant pleaded the prescription of ten years, but only the prescription of thirty years is contemplated by Article 847. Keller v. Shelmire, 42 La.Ann. 323, 7 So. 587; Davis v. Moore, 156 La. 488, 100 So. 691. The judgment fixing the, boundary of plaintiff’s property in accordance with her title is correct. .
“That portion of the judgment which orders the removal of encroachments , upon plaintiff’s boundary as established by the recent Eustis plan must be over- - ruled because, as defendant strenuously contends, the question of ownership cannot be decided in an action of boundary. Sprigg v. Hooper, 9 Rob. 248; Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566; Keller v. Shelmire, supra; Clapham.v. Clayton, 118 La. 419, 43 So. 36 and Davis v. Moore, supra.
“A petitory action -.is necessary to 'vindicate- title. When and if such an action is brought -by. plaintiff and defendant should decide to renew her plea of prescription of’ten-years and other defenses inappropriately urged here, their merit can .be' determined, but riot in' an -action .of boundary.”. 1
In the Mdfef case, supra, the Court found as, a fact that a' fence had béen erected on the property of the1, plaintiff‘by the defendant and that a garage belonging io defendant was partially .built on'plaintiff’s, property, and after holding urider the authority of Keller v. Shelmire, supra, and Davis v. Moore, supra, the latter cáse being based upon Keller v. Shelmire, that defendant in a boundary suit could not’plead'acquisitive prescription of ten years but qnly'the prescription'of thirty years, held that it could not order the removal of the fence and garage which it found to be encroached upon the plaintiff’s boundary, and stated that a separate petitory action would be necessary. As a result of this decision plaintiff then filed a petitory action. Franz v. Mohr, La.App., 4 So.2d 584, to which the defendant reurged his plea of ten years prescription acquireridi causa. This case resulted in' a judgment in the district court for the plaintiff and was appealed to the Orleans Court of Appeal and there reversed on the- ground that the defendant’s prescriptive plea was good and valid.
These two cases illustrate the absurd and costly consequence resulting from the interpretation of the Shelmire case. Thus we see the- plaintiff and defendant going through a costly boundary suit in which the court stated the plaintiff’s boundary was the correct limit but at the same time refused to order the. removal of the defendant’s fence and the garage from the disputed *124 property, resulting in another costly peti-tory action in which the very plea of ten years prescription set up as a defense to the plaintiff’s action of bounda'ry was sustained, thereby giving' the disputed strip of ground to the defendant' which, of course, included the fixing of the defendant’s boundary exactly where the Court in the boundary suit had stated the plaintiff’s boundary should be. It would appear that the confusion has arisen as a result of the failure to concede or consider that a boundary may be acquired or fixed by the title or as the result of the ten and thirty years prescription acquirendi causa. That is exactly what happened in the Mohr case, supra, for when it was appealed as a boundary action upon the most ancient title, expressly excluding defendant’s plea, of ten years prescription, the boundary was fixed for the plaintiff, and yet when it was appealed as a petitory action the court said that the defendant had acquired the boundary under his plea of ten years prescription. The interpretation which has been given to the Shelmire case, supra, causes a multiplicity of suits at a greater expense to the litigants and without any reason as to why Article 847 should be construed as excluding an absolute right to acquire property and establish boundaries where the contentions are made under Article 3478 of the LSA-C.C.
Before concluding this phase of the case it might be well for the author to admit that in Nash v. Curette, 56 So.2d 250, this court followed the previous interpretation placed upon the Shelmire case, citing the Moore and Mohr cases, supra. Should the decision in the case at bar finally stand, the Curette case on the question mentioned is hereby overruled.
The case of Laurent v. Laurent, 146 La. 939, 84 So. 212, 215, was an action of boundary in which the defendants plead the prescription of thirty years under article 3499 et seq., and that of ten years under article 3478 et seq. The case does not specifically show any objection to the last named plea, however, the court considered the plea and stated:
“ * * * In any event, such prescription acquirendi causa must be supported by continuous, uninterrupted, public, and unequivocal possession during all the time ‘under the title of owner.’ C.C. art. 3500. ■ And the prescription of 10 years, acquirendi causa, must be supported by a just title, acquired ini good faith, and continuous, uninterrupted, peaceable, public, and unequivocal possession, as owner, during that period. C.C. art. 3478 et seq. * * *
Again in Carr v. Geoghegan, 11 La.App.74, 123 So. 371, decided by the Orleans Court of Appeal, with Judge Janvier as the Organ of the Court we find an action in boundary and a plea of prescription of ten years in which the court stated:
“ * * * In support of his plea of prescription of 10 years, defendant alleges that he and his authors in title have had actual physical possession of the small strip of land in question for more than 10 years, and that this possession has been under color of title.”
■ The Court evidently thought the plea proper in a boundary action for It considered it. The plea was not sustained because “the strip, of land in question was not within the title limits of defendant * *
The case of Carnahan v. McCoy, La.App., 49 So.2d 78, 79, involved a question of boundary in which the defendant, among other pleas, evidently relied upon the plea of ten years prescription under Article 3478 of the LSA-Civil Code. Our brethren of the Second Circuit considered the plea as shown by the- following statement:
“ * * * Neither do we feel that the provisions of Article 3478, in which reliance is also placed by counsel for defendant, is applicable since it requires acquisition of an immovable in good faith and just title. Defendant has shown no title to the property in dispute.”
In Sattler v. Pellichino, 71 So.2d 689, 692, this court had occasion to consider a petitory action as a defense to which the plaintiff plead the prescription of - thirty *125 years under Article 3499 and Article 852 of our LSA-Civil Code. Although the prescription under Article 852 specifically referred to an action in boundary, we recognized that by such prescription one could acquire title to real estate, and held that it could be properly plead as a defense to a petitory action. We cited an article in the 13th Louisiana Law Review (Vol. 13, No. 4) at page 585, and we feel that the same reasoning could be applied for the allowance of a plea of ten years acquisitive prescription under Article 3478, LSA-C.C., as a defense to a boundary suit as was made in the stated Article for the allowance of the prescription set forth in Article 852 pertaining to the fixing of boundaries as a defense to a petitory action, and we again quote from this Article:
“ ‘If one is faced with the defense of a petitory action, it would appear that a boundary action and Article 852 could be properly pleaded in a reconventional demand. Aside from ownership of the strip of land in dispute, titles of the respective parties are seldom at issue. In reality only the proper location of a boundary is at .issue. Is not one element of plaintiff’s cause of action in a petitory action the delimitation of the title sued upon? Regardless of the state of the remainder of his title, if plaintiff in a petitory action claims a boundary which includes land lost by the effect of prescription under Article 852, then plaintiff should not be permitted to regain the land by his form of action alone. Since the outcome of a boundary action would give the land to defendant, it is not logical to permit a plaintiff to escape such an outcome -by resort to the petitory action. It is submitted that even should such a petitory action be filed by one who was.unsuccessful in a prior boundary action, an exception of no cause of action or a plea of res adjudicata should be sustained.
* * * * * ■ *
“ ‘(1) Article 852 states a rule of prescription by which one may acquire ownership of land outside one’s title description if the land has been possessed within visible bounds for a period in excess of thirty years; and,
“ ‘(2) Article 852 can be utilized in any action proper to determine ownership or the right to possession of such land.’ ”
We submit that Article 3478 states a rule of prescription by which one may acquire a boundary and ownership of the land within his title bounds if the elements required by the law are so fulfilled to perfect his title. We further submit that Article 3478 can be utilized in any action to determine ownership or the right to possession of the land described within the title bounds, and it logically follows that when so used it establishes the boundary to real estate. It is a means of acquiring a boundary and can therefore be used as a means of defense in a boundary suit.
We again submit that there is no reason in law for forcing litigants to go through two law suits, one a boundary action and the other a petitory action, in order to ; settle the boundary.
We also submit that under Article 847 ■ of the LSA-Civil Code, it specifically recognizes that the prescription of ten years under Article 3478 should be included therein when it states that the’ more ancient title from a common author should be given preference unless an adverse possession for a time sufficient to establish prescription has produced a difference in the situation of the parties, in other words, one who can satisfy the requirements of Article 3478 of the LSA-Civil Code, ■ even though he have a later title from a common author, has by his adverse possession of ten years under color of title established a prescription to the land in dispute to the bounds as set forth in his title, which produced a difference in the situation- of the parties as contemplated by the Article.
Article 846 of the LSA-Civil Code, which deals with a determination of boundary by reference to primitive concessions, recognizes the title of the one who has the latest concession and states that he takes the *126 quantity of land therein mentioned and the other parties have a right only to the rest, but it further states that this Article must be understood to except the case in" which the person having the title of later date may have acquired by prescription the quantity of land mentioned in this concession.
We therefore hold that the defendant properly plead the prescription of ten years under Article 3478 of the LSA-Civil Code as a defense to this socalled boundary action.
It now remains- for us to determine whether the plea should be sustained, which necessitates a discussion of the facts in this case.
In order that the remainder of this opinion might be better understood, there is included the following map:

The evidence reveals that defendant had lived on this property for seven years and had possessed up to the fence •shown on the map which angles across a portion of the 22 feet in dispute, which is marked D2. There is some testimony as ■to another party living on the property for three years prior to the date the defendant lived there, however, the possession necessary under the plea of ten years acquisitive prescription is not sufficient to .■sustain it. There is some testimony that this fence had been there for many years. One witness testified that i-t was there in 1922, and while it was thought to be the line, there is no testimony that it was ever established or recognized as a division or boundary line.
This brings us to the second question, as to which of the two parties holds the older title. The basis of plaintiff’s title is a deed from Monroe Morris to Herbert Powe, executed on the 2nd day *127 of May, 1929 in which the following described property was transferred:
“A lot of land SE% of SE% Sec. 11 Tp. 3 S. R. 13 East St. Hel. Med. as follows: Start where east line of NOGN Right of Way crosses north line of said SE% of SE% Sec. 11; thence east across street about 20.5 feet, thence south 14% deg. West along east side of street, to the north side of alley, between the Monroe Morris Property and the Andrew Davis property which is the point of beginning, and the SW corner of property herein sold; thence east along alley 54 feet; thence northerly along fence 209 feet¿ angled to run to a point 22 feet from the east line of said street, thence west 22 feet to said street; thence southerly along said street 209 feet to point of beginning, the SW corner of the said lot. The lot herein being 209 feet on street running right along right of way, by depth 22 feet on north end, and 54 feet depth on south, the south end, being on the alley between Morris and Davis, just NORTH of the Davis Property.” (Emphasis added) ■
By taking special note of, that portion of the description which has been emphasized, it is clear that Monroe Morris intended the old fence to be the east boundary line of the property transferred which would have included only a portion of D2, the property in dispute.
Let us examine the defendant’s chain of title in order to ascertain the date of his acquisition.
On the 16th day of November, 1920, Monroe Morris sold to Chaney Williams that portion shown on the map as D1 and which is described in the defendant’s offering No. 1. Under defendant’s offering No. 2, we find a transfer by Claude Morris, in which the deed states that he acquired the property being transferred from Monroe Morris, to Alfred Williams, on the 3rd day of March, 1921, of the following described property:
“A certain lot or parcel of land in S.E.% of S.E.% Sec. 11, Tp. 3 S.' R. 13 East St. Hel. Mer., as follows, to-wit:
“Starting where east line of N.O.G. N.R.R. right of way crosses north line of S.E.% of S.E.% Sec. 11, as above; thence Southerly down right of-way about 1500 feet to point opposite S.W. corner of Monroe Morris’s field, the point of beginning; thence Easterly 22 feet to S.W. corner of land conveyed by Monroe Morris to Chaney Williams; thence north paralleling land of Chaney Williams and continuing in a straight line beyond, 209 feet; thence Westerly at-right angles 22 feet; thence southerly at right angles 209 feet to point of beginning.
“This being a parcel of land measuring 22 x 209 feet in the east part of a certain parcel of land conveyed to vendor by Monroe Morris of record in the official records of. this Parish.”
The property contained in this description is the property in dispute and denoted on the map as D2. . Therefore, on the 2nd day of May, 1929 when Monroe Morris sold a portion of D2 to^ Herbert Powe, the former had already divested , himself , of title in a deed to Claude Morris and Claude Morris had already sold the property in dispute .shown as D2 on the map to Alfred Williams.
On the 13th day of July 1929 Herbert Powe transferred to Andrew Dqvis by a. surveyor’s description the property shown as D2 on the map. In this deed he stated: that the transfer “is intended to cover the-same land described in deed from Monroe Morris.to vendor as aforesaid, the dimensions and distances in that deed being mere-estimates.” In this .deed it is clear that Herbert Powe disregarded the fence as the-east line and took all of the property shown, as D2 on the map.
Evidently something happened betweem Monroe Morris and Powe of his vendee Davis, for on the 15th day of July 1929' we find a transfer from Monroe Morris- and Claude Morris in which it is stated r
*128 “ * * * who declared that on the 10th day of February, 1929, said Monroe Morris conveyed to said Claude Morris a certain strip or parcel of land ■situated in Washington Parish, Louisiana, described as follows:
“A strip of land in the southeast •quarter of the southeast quarter (SE^ ■of SE14 of Section eleven (11), Tp. 3 South Range 13 East St. Hel. Mer. as follows: Being SO feet wide, more ■or less, and 209 feet long in the southwest corner of Monroe Morris’s field; being all of the strip of land lying west ■of and between the land of Chaney Williams and the public road running .along the NOGN right of way, the land herein sold being all of the strip being about 50 feet wide and being 209 Jeet north and south.
“Said appearers declared further that •said description was and is erroneous and does riot correctly describe the land ■intended to be conveyed, and as it was ■the intention of the parties to convey land entirely inside of the Monroe Morris Field, and the said parties declare that the said deed is hereby ■cancelled and erased and set aside and the title reverts to and becomes vested •in the said Monroe Morris, subject to the sale of the land made by Claude Morris to Alfred Williams on the 3d ,day of March 1921, and recorded in C.B. 36 page 607, which covers land within the said Monroe Morris field .as recently surveyed by T. E. Pigott, Parish Surveyor; leaving a strip west ■of and between the west line of said Field and a public road sold by Monroe Morris to Herbert Powe, per deed «recorded in C.B. 54, page 359, which .deed is ratified and the property herein intended to be sold lying between said Road or Street and the west line of' ■the said Field, and which was surveyed "by T. E. Pigott, Surveyor, and meas-ux*es 67.5 feet on the south side of 12.6 feet on the North end and measuring 209 feet along line of Chaney Williams and Alfred Williams land, .and both appearers hereby ratify the said deed made to Herbert Powe, and conveying the land described in the said survey made by T. E. Pigott, Surveyor.” (Emphasis added)
The deed from Monroe Morris and Claude Morris to Herbert Powe, which is an attempt to correct the description in the original deed from Monroe Morris to Herbert Powe, is full proof that Monroe Morris had transferred a parcel of land to Claude Morris on the 10th day of February 1921 (the deed shows “19291” with an attempted erasure of the “1”. Apparently it should be 1921.) and as shown by that portion of the sale which has been emphasized, Monroe Morris and Claude Morris excepted from the sale to Powe the land which Claude Morris had transferred to Alfred Williams on March 3, 1921, and which is the 22 feet of land in. dispute and shown on the map as D2.
On the 3rd day of March, 1921, Monroe Morris, who had previously sold Dl shown on the map, to Chaney Williams, wife of Alfred Williams, transferred to Alfred Williams the property described as D3 on the map, and in this deed it was stated that “this title being in correction of title” of the deed from Monroe Morris to Chaney Williams. Evidently he intended to regain title to Dl, however, under the terms of the deed he did not do so.
By the transfers heretofore shown in the defendant’s chain of title we see that Alfred Williams became the owner of the property designated as D3 on the map as well as the 22 feet now in dispute designated as D2 and accordingly on the 22nd day of September, 1939,. Alfred Williams and Laura Banks Howze, who is shown in the deed as the sole and only forced heir of Chaney Williams, wife of Alfred Williams, transferred to Robert M. Banister the property designated as D3 and D2, the latter being the 22 foot strip in dispute.
On the 26th day of May, 1941, there is a deed from Monroe Morris to Robert M. Banister, covering the property designated as Dl, which it is to be remembered was first sold by Monroe Morris to Chaney Williams, wife of Alfred Williams, and *129 then by deed of correction by Monroe Morris to Alfred Williams, .the property designated as D3 was substituted therefor, and also included -under Description No. .1 is -the property designated as D2 and in description No. 2 of the deed Monroe Morris transfers the 22 feet in, dispute designated as D2. On the date of this transfer, Monroe Morris had long since divested himself of title to D2 as well as D3, and the only additional property which Robert M. Banister acquired which he did not already own was that portion designated as Dl.
The defendant through his authors in title, having acquired the property in dispute designated as D2 in the transfer from Claude Morris to Alfred Williams, on the 3rd day of March 1921, and the plaintiff’s title only dating back to the 2nd day of May 1929 by deed from Monroe Morris to Herbert Powe, and then only for that portion of the property shown on the map to have been west of the fence line,' the defendant has the most ancient-title.
Therefore under Article 847 defendant is entitled to have the boundary shown in his deed accepted and established as the boundary between his property on the west and the property of the plaintiff on the east, in other words, the survey of his land is to be accepted in fixing and establishing his western boundary and the plaintiff’s east boundary.
It is therefore ordered that the judgment of-the District Court be reversed and that there be judgment in favor of defendant, Andrew Otis, and against the plaintiff, Joe N. Collett, approving and homologating that part of the proces verbal of E. J. Champagne, surveyor, duly appointed herein by the Court and the sketch thereto annexed, describing the- boundary between the property of plaintiff and defendant as set out in defendant’s title wherein said surveyor described said land of defendant and the boundaries thereof as follows:
“I then proceeded to make the survey. I found an old iron stob at the intersection of the north line of Section 46 Township 3 South Range 13 East Greensburg District Louisiana and the east line of the G M & O Railroad Right-of-way., I also found an old iron stob on the east line of the G M & O Railroad Right-of-Way North 14 degrees IS minutes East 209.0' from the intersection of. the said Right-of-way and north boundary of Section 46 * :& * ”
“From the iron stob located 209.0' 'North 14 degrees 15 minutes East of the intersection of the north line of Section 46 and the east line of the G M & O Railroad Right-of-Way I proceeded East 73.7' and set an iron stob for the southwest corner of the property described for Andrew Otis and POINT OF BEGINNING. I then proceeded South 122.0' to an iron stob for the southeast corner of the property described for Andrew Otis. I then proceeded North 209.0'-to an old iron stob established by Mr. T. C. Pigott. I then proceeded due West 122.0' to a hole in the concrete for the northwest corner of the property described for Andrew Otis and established by Mr. T. E. Pigott. Then I proceeded South 209.0' to an iron stob and point of beginning.”
It is ordered that the boundary between the land of plaintiff and land of defendant be and the same is hereby fixed in accordance with the above survey.
It is further ordered that the plaintiff and defendant pay all costs of this suit including 'the fees of the surveyor in accordance with the bill filed which is hereby approved.
Judgment reversed.