FRUGE, Judge.
This suit was filed by plaintiff on November 21, 1957 under provisions of LSA-R.S. 13 :5062 for the purpose of being adjudged the owner of a tract of land purportedly containing 35.40 acres. In her petition, plaintiff alleged that neither she nor the defendant was in possession of the land in dispute, but, in the event it was found that defendant was in possession, she asked, in the alternative, that suit be tried as a petitory action. Defendant excepted to the form of action which exception was overruled. The suit was tried as a petitory action and judgment was rendered for plaintiff; from this judgment defendant has appealed.
The plaintiff, Mrs. Emma LeBlanc De-rouen, seeks to be recognized as the owner of a tract of land described as follows:
A certain tract of land, together with all rights, ways, privileges, servitudes and appurtenances thereunto belonging, situated in the Fifth Ward of the Parish of Iberia, State of Louisiana, in Section 46, Township 12 South, Range 5 East, Southwestern Land District of Louisiana, containing and measuring thirty-five and forty-one-hundredths (35.40) acres in superficial area, bounded on the North by property of Wallace Romero, or assigns (formerly the property of Adonis Derouen), on the South by property of George Trappey, Sr. and George Trappey, Jr., or assigns (formerly the property of Emma Le-Blanc Derouen), on the East partly by property of George Trappey, Sr. and George Trappey, Jr., or assigns, and partly by property of Wallace Romero, or assigns, and on.the West by property of Theo David, or assigns, which property is more particularly shown on a plat of survey made by C. Howard Fenstermaker, Jr., Civil Engineer, surveyed August 20th, 1957.
In her petition, plaintiff alleges that the defendant, Fernest Poirier, also claims to own the property, but that neither she nor Poirier is in possession thereof; she therefore seeks to have the title of the tract adjudicated under the provisions of LSA-R.S. 13:5062. In the alternative, she alleged that if Poirier is found to be in possession of the property, then she desires to prosecute her claim as a petitory action. The trial court held that: “The evidence shows that Poirier is in possession of the tract. *133 The suit should therefore be tried as a peti-tory action”.
It is an undisputed fact that the title of both plaintiff and defendant emanates from an act of partition between plaintiff Emma LeBlanc Derouen and her divorced husband, Adonis Derouen, dated December 24, 1937, which is recorded in Conveyance Book 133, Folio 193 of the records of Iberia Parish, Louisiana (Tr. 66 to 72). Attached to this act of partition is a plat showing the property owned by Adonis Derouen and his wife. (We have reproduced a portion of this plat in this decision.)

*134 In this partition Emma LeBlanc Derouen was allotted as part of her share of community property the following described tracts:[1]
“(b) Another certain tract of land, situated in the Fifth Ward of the Parish of Iberia, Louisiana, containing 23 arpents, and bounded on the North by the property hereinafter described under item ‘d’, on the South by Eraste De-rouen, on the East by private road and on the West by property hereinafter described under item ‘c’. Said property being designated as Lot 1-B on the plat above referred to. This being the property acquired by Adonis Derouen from Fannie R. Kling, et als., on January 27, 1930, of record in Conveyance Book 113 at folio 352 of the records of Iberia Parish, Louisiana.
“(c) Another certain tract of land, adjoining the above described property, containing 15 arpents, and bounded on the North by the property hereinafter described under item ‘d’, on the South by property of Segura and others, on the East by property above described under item ‘b’, and on the West by Theo David and others. Said property being designated as Lot 1-C above referred to. This being the property acquired by Adonis Derouen from George Derouen, on May 9, 1932, of record in Conveyance Book 116 at folio 310 of the records of Iberia Parish, Louisiana.
“(d) Another certain tract of land, adjoining the above described property, containing 35 arpents, and bounded on the North by property of Adonis De-rouen, on the South by the properties described above under items ‘b’ and ‘c’, on the East by private road, and on the West by Theo David and others. Said property being designated as Lot 1-D on the plat above referred to. This being the property acquired by Adonis Derouen from Hamilton Derouen, on February 7, 1911, of record in Conveyance Book 70 at folio 309 of the records of Iberia Parish, Louisiana.” (Emphasis added.)
Thus we see that Emma LeBlanc Derouen acquired 23 arpents (Lot 1-B), 15 arpents (Lot 1-C), and 35 arpents (Lot 1-D), or a total of 73 arpents [this area is designated as CDEF on plat] which was “bounded on the North by property of Adonis Derouen”.
A portion of the property allocated to Adonis Derouen is described as follows:
“(b) A certain tract of land, situated in the Fifth Ward of the Parish of Iberia, Louisiana, containing 12 arpents [area EFPQ], and bounded on the North by property hereinafter described under item ‘d, on the South by property of Mrs. Emma LeBlanc De-rouen, on the East by private road and on the West by property of Hamilton Derouen and others. Said property being designated as lot 2-B on plat above referred to. This being the property acquired by Adonis Derouen from Harrison Derouen on December 11, 1909, recorded in Conveyance Book 66, folio 425.[2]
“(c) A certain tract of land, situated in the Fifth Ward of the Parish of Iberia, Louisiana, containing 12 arpents [area PQTU], and bounded on the North by property of Gilbert Derouen, on the South by property just above described under item ‘b’, on the East by private road and on the West by property of Hamilton Derouen and others. Said property being designated as lot 2-C on plat above referred to. This being the property acquired by *135 Adonis Derouen from Ada Derouen Comeaux, on January 25, 1912, recorded in Conveyance Book 74, folio 23.
“(d) A certain tract of land, situated in the Fifth Ward of the Parish of Iberia, Louisiana, containing 12 arpents [area RSYZ], and bounded on the North by separate property of Adonis Derouen, on the South by property of Gilbert Derouen, on the East by private road and on the West by property of Hamilton Derouen and others. Said property being designated as lot 2-D on plat above referred to. This being the property acquired by Adonis Derouen from Alice Derouen Dore on January 9, 1905 recorded in Conveyance Book 55, folio 338.”
On January 3, 1905 Adonis Derouen had acquired from Alice Derouen, widow of Melicourt Dore, the following described property:
“ * * * Another certain tract of wood land situated at the same locality and measuring Twelve Acres [Ar-pents [3]] in superficial area bounded North by Lot 31, on the South by Lot #29, on the East by Lot #9 and the West by Dolze LeBlanc et al. This being # thirty of the estate of Norval Derouen. The two tracts of land herein sold are the same properties inherited by the present vendor from the estate of her deceased father Mt. Nor-val Derouen by act passed before the undersigned notary on the-day of December A.D. 1904.”
Thus we see that on December 24, 1935, Adonis Derouen owned Lot 30, Lot 29 (or Lot 2D), Lot 27 (or Lot 2C), and 26 (or Lot 2B); each of these lots contained 12 arpents or a total of 48 arpents. (In 1944 Adonis Derouen increased his holding in the immediate area to 60 arpents [area ABEF] by acquiring Lot 28 [area RSTU] from Gilbert Derouen.[4]) This land was “bounded on the South by property of Mrs. Emma Derouen”. Thus we see as late as December 1935 the boundary between Emma LeBlanc Derouen’s 73 arpents and Adonis Derouen’s land was recognized to be the line between plaintiff’s Lot “ID” and Adonis Derouen’s Lot “2B” (Lot 26) ; or as the trial judge correctly found:
“The line in dispute is the south line of a lot originally designated as Lot 26 in the partition of the property belonging to the Succession of Norval De-rouen. This partition was made in the year 1903, and location of the lots is shown in a plat made by D. T. Peebles, a surveyor, introduced in evidence as Exhibit P-5.
“This line marks the southern extent of defendant’s property, and the. northern limits of plaintiff’s. It is supposed to be their common boundary.” (Tr. 114).
Along with other land Adonis Derouen sold this 60 arpents [area ABEF] to Wal *136 lace Romero.[5] The defendant Poirier purchased the southern one half of the property [area EFNO] from Wallace Romero on March 17, 1953 (Tr. 9).
Plaintiff conveyed and sold to George Trappey, Jr. and George Trappey, Sr. by act dated October 22, 1956 the southernmost 38.14 acres [area CDLM] of her property, said property being described as follows:
“A certain tract of land, situated in the Fifth Ward of the Parish of Iberia, Louisiana, and in Section 46, T.12 S., R. 5 E., containing 38.14 acres, and being more particularly described as beginning at an iron stake in the southwest corner thereof, thence north 21° 10' west 463.5 feet, thence north 68° 20' east 3722.2 feet, thence south 22° 55' east a distance of 413.2 feet, thence south 67° 36' west a distance of 2061.8 feet to buggy axle, thence south 68° 56' west a distance of 706.2 feet to second buggy axle, thence south 68° 25' west a distance of 968.9 feet to point of beginning; said property being generally bounded north and east by Poirez, south by property of C. LaBauve Estate, F. Segura Estate and Arast De-rouen, and west by property of Theo David; as being more fully shown by plat of survey made by C. K. Langlin-ais, civil engineer, dated October 11, 1956, attached hereto and made a part hereof.” (Tr. 1 to 3).
Since plaintiff started off with a record title of 73 arpents [area CDEF] or 61-77844 acres, and sold 38.14 acres [area CDLM] it should follow that plaintiff had only 23.63844 acres [area EFLM] remaining, yet she claims 35.40 acres [approximately area shown as PQLM]. It appears that to a great extent her claim is based on a plat of survey made by C. Howard Fen-stermaker, Jr. dated August 20th, 1957. At this point we would like to quote from the trial court’s Reasons for Judgment:
“The plaintiff arrived at the acreage she claims by employing a surveyor to measure the property lying between a part she sold and the place where the surveyor claims is the disputed line. This gives her more property than her deed calls for. It also gives the defendant less property than his deed calls for.
* S{C * * *
“Converting plaintiff’s 73 arpents into acres, by multiplying it by .85 (which is the accepted practice), she acquired in the partition 62.05 acres. After selling 38.14 acres to the Trap-peys she should have left 23.91 acres. By claiming 35.40 acres she is therefor claiming 11.49 acres more than her deed calls for. However, that is the amount of land the surveyor found between the Trappeys and where he says the south line of Lot 26 should be. That line cuts deeply into the tract that Poirier claims.
“Poirier acquired his tract with other land. His deed calls for a total of 131.34 acres described as a whole, but reference is made to a plat of survey made by R. A. Broussard which shows that he acquired 50.51 acres in the area in controversy. His deed is Exhibit Exceptor Poirier 3, and the plat is Exhibit Exceptor Poirier 2 (Plat).
“It is evident by his chain of title that his vendor, Wallace Romero, owned only thirty (30) arpents in that tract. It is composed of Lots 26, 27, and the south one-half of Lot 28 of the Norval Derouen Partition, shown on *137 the Peebles Plat,’ Exhibit P-5. These lots contain twelve (12) arpents each.
“Five of these lots belonged to Adonis Derouen after the settlement .with his wife. He sold them to Wallace Romero in the deed which is Exhibit P-20, and Romero sold the Northern one-half of them to Earl Justin and Ethel T. Trimble in the deed which is Exhibit Exceptor Poirier 2. The Broussard Plat was attached to that sale and shows the northern one-half of these five lots to contain also 50.51 acres. In the Norval Derouen Partition, where they were formed, the five lots are shown to contain only an area of sixty (60) arpents.
“The records therefore show that the Poirier tract should contain thirty (30) arpents, or 25.5 acres. [Being the southernmost half of the 60 arpent tract formerly owned by Adonis Der-ouen, or area EFNO.]
“If plaintiff’s claim prevails, his tract would contain only 14.52 acres. He would have a shortage of 10.98 acres and plaintiff a surplusage of 11.49
acres.
“Plaintiff justifies her claim to this area, however, by pointing out that she acquired the property according to fixed boundaries and under the provisions of [LSA] Revised Civil Code Article 854 she owns all of the property within these boundaries even though the area is greater than that mentioned in the deed.
“Specifically, she claims that the tract of land designated as 1-D alloted to her in the community partition is bounded on the north by the lands of her husband, Adonis Derouen, and that his land consists of the lots of the Nor-val Derouen Partition, the southernmost of which is Lot 26. She therefore claims to have acquired all of the land south of Lot 26 that is included in her other boundaries.
“The article of the [LSA] Civil Code she cites provides:
“ ‘Art. 854. If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it gives him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title.’
“That principle of law, of course, is not disputable. It should be observed, however, that the boundaries therein mentioned are described as ‘fixed’ boundaries. A disputed line between adjacent property owners can hardly be referred to as a ‘fixed’ boundary.
“Not only that, but plaintiff’s claim to the disputed area does not rest primarily upon her recorded title, but upon the place that her surveyor placed her north line. That is what caused the controversy. The defendant does not dispute plaintiff’s recorded title, but he seriously takes issue with the surveyor’s line.
"The petitory action is not designated as the action to establish a boundary. It does not afford a defendant of the opportunity to witness the survey and of having access to the surveyor’s proces verbal and of ascertaining, in advance of the trial, how the surveyor proceeded to establish his line.
“The petitory action, of course, is designed to litigate the title to immov-ables, as it is reflected by the public records. There seems to be no question about the records here. The dispute is over a boundary line. The petitory action is unwieldly to try that issue.
“Under certain circumstances a boundary may be established as a result of the action. This is- so ¡particularly when the evidence clearly shows *138 where the boundary should be. But here, this is not the case. The survey by which the plaintiff seeks to establish it was a general survey. It lacks many of the details that are necessary to make it convincing. It conflicts in many respects with other evidence in . the record, and it is not possible to determine which evidence is correct.
“For instance, plaintiff’s surveyor started his survey from a post pointed out to him by Claude Derouen, the son ■of Adonis Derouen, as. being on the northeast corner of Lot 30 of the Nor-val Derouen Partition. Mr. Adonis Derouen. testified at page 44 of the Note of Evidence that this stake was between the lot he received (Lot 29), and the lot allotted to his sister, Alice (Lot 30), in the partition. The stake would therefore be at the southeast [ point Z], not the northeast, corner of Lot 30 [ point B]. The distance between these two points is the width of Lot 30; 145,2 feet.
“It is true that the surveyor confirmed the location of his starting point by running east from it to a railroad track, not shown on the Norval Derou.en Partition Plat, and following the track south to a road shown on the plat, then along this road east to another road shown on the plat, then west along the road on the south to the western end of the property and then north to his starting point. He stated that the distances he measured conformed closely, within about fifty feet, with the landmarks he found on the ground, such as roads, fences and stakes. He confirmed the establishment of the disputed line by locating some of the tracts and landmarks of the Norval Derouen Partition property on a plat he made on the same scale as the plat of his survey, and laying one over the other so that the location of the lines could be compared. The lines fall closely to one another.
“What the survey fails to show, however, are the location of the blazed lines on the trees established to mark the lines between the lots that Mr. Adonis Derouen testified are clearly visible and whether, or not, the old fence lines used by the former owners to mark their boundaries are still visible on the ground, and, if so, their locations. These are always important in the establishment of boundaries.'
“The defendant Poirier testified that when he purchased the property he was shown a pipe at each end of the disputed line, and a fence along the line. There is no evidence to show their location with reference to the line established by the surveyor, or that the surveyor made any effort to find them.
“Had these landmarks been pointed out to the surveyor, there is a possibility that they would have influenced the result of his survey for there is a rule of surveying that the survey must yield to visible boundaries or old lines when they are within a reasonable distance from a point established by the new survey.
“The survey also contains several unexplained discrepancies between it and the Norval Derouen Plat that it attempts to retrace. One is that the lines between the lots on the plat are parallel, but they are not on the survey plat.
“Also, these lines are shown on the plat to be 55.4 chains, or 3656.4 feet, long. The survey shows them to be of different lengths and to be considerably longer than 3700 feet. The surveyor suspects that the original surveyor made a mistake.
“Another discrepancy is that the plat shows the north line of Lot 7 to terminate at about the middle of Lot 28, which should be at Poirier’s north line, as he purchased the lower 2Yz lots.
*139 “The survey, apparently, shows the north line of Lot 7 to he considerably north of Poirier’s north line. This discrepancy may be because the partition plat was not drawn to scale. It does not appear to have been drawn to scale, yet the position of these lines may be shown as they were originally laid out on the ground.
“The survey [Fenstermaker’s] also is at considerable variance with the Broussard survey plats.
“In view of these circumstances, it must be held that the survey and the testimony supporting it fail to establish by a preponderance of the evidence the location of the disputed line at the place the plaintiff claims, and hence the title to the area in dispute, as is required in petitory actions. That part of her demand must therefore be rejected.
“However, the plaintiff has shown by the public records that she is entitled to be recognized as the owner of the property she received in the community partition with her husband remaining after her sale to George Trappey, Sr. and George Trappey, Jr.
“The defendant’s pleas of estoppel are not well taken because he has failed to show that he acted to his detriment on account of the positions taken by the plaintiff of which he complains. Estop-pel is an equitable plea and lies only to prevent an injustice from being done. This is not the case here.
“Therefore, let there he judgment in favor of the plaintiff and against the defendant recognizing the plaintiff to be the owner of the property she acquired in the act of partition recorded at Conveyance Book 133, folio 193, dated December 24, 1937, less that portion of it she sold to George Trappey, Sr. and George Trappey, Jr. on October 22, 1956, which sale is recorded at Conveyance Book 299, folio 25, of the records of Iberia Parish, Louisiana, at defendant’s costs.” Tr. 114 to 119. (Emphasis added.)
Plaintiff claims that:
“It is elementary that the action' in boundary has as its purpose the separation of contiguous lands owned by two or more individuals. LSA-C.C. Art. 823 and LSA-C.C.P. Art. 3691. As a prerequisite to the action in boundary, it was essential and necessary that Emma LeBlanc Derouen establish her ownership to the property being claimed and occupied by Fernest Poirier. Now that the ownership and title of Emma Le-Blanc Derouen has been established, an action in boundary will lie if Fer-nest Poirier persists in his refusal to recognize the southern boundary line of Lot 26 of the Norval Derouen partition as the boundary between his property, on the north, and that of Emma LeBlanc Derouen, on the south (Exhibits 4 and 29). Sessum v. Hemperley et al., 1957, 233 La. 444, 96 So.2d 832, p. 841.” (Emphasis added.)
While it is true that defendant was and is presently possessing some of the land claimed by plaintiff, nevertheless the record clearly shows that the defendant was not claiming nor possessing more than he :was entitled to according to his record title. On the other hand, it was the plaintiff that claimed (but failed to prove) more than her record title. It appears that plaintiff brought a petitory action to “establish her record title”, when in fact the real purpose of the suit was to locate the South line of Lot 26 of the Norval Derouen Partition Plat by Mr. Peeples; the proper and logical action to locate this boundary line was simply a boundary action. In Collett v. Otis, La. App., 80 So.2d 117, at page 125, the court clearly stated:
“We again submit that there is no reason in law for forcing litigants to go through two law suits, one in bound *140 ary and the other a petitory action, in order to settle the boundary.”
We are in agreement with the trial court’s finding that “the survey [Fenster-maker’s] and the testimony fail to establish by a preponderance of the evidence the location of the disputed line at the place plaintiff claims, and hence the title to the area in dispute, as required in petitory actions”. Factually, as a result of the instant suit both plaintiff and defendant are in the very same position that they were prior to its being filed. Shortly after the filing of the instant suit, the defendant correctly pointed out that this was the wrong form of action; we are in complete agreement, with his observation.
The trial, judge ordered that “defendant, Fernest Poirier, pay all costs of these proceedings”. After reading the record and ■ considering the various circumstances of this'case, we are of the opinion that defendant should Not be taxed with costs. , .
Article 2164 of the LSA-Code of Civil Procedure (1960) reads’as follows:
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the cost of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”
For the reasons herein assigned, the judgment appealed from is hereby amended so that all cost resulting from or arising out of the instant suit in both the lower and appellate courts is hereby taxed to plaintiff; as amended the judgment is affirmed.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. It is interesting to note that in her petition, plaintiff claimed that by virtue of this partition she acquired 23 acres, 15 acres, and 35 acres or a total of 73 acres, rather than 73 Arpents. One (1) arpent is approximately .84628 acre.

. This lot was designated as “Lot 26” when Harrison Derouen acquired it in the partition of the estate of his father, Norval Derouen.

. In the Act of Partition of the Estate of Norval Derouen and the plat of survey attached thereto dated November 28, 1903 (Tr. 37), lots 26, 27, 28, 29, 30, 31 and 32 are referred to and designated as each containing 12 Arpents.

. Adonis Derouen (who was then judicially separated from his wife) purchased from Gilbert Derouen on March 24, 1944 the following described property:
“A certain tract of land, together with all rights, ways, servitudes and appurtenances thereof, situated in the Fifth Ward of Iberia Parish, La., containing twelve (12) acres [arpents], and being bounded on the North by Lot 29 belonging to Adonis Derouen, on the South by Lot #27 now belonging to Adonis Derouen, on the East by Private Road, and on the West by property of Dolze LeBlanc, and being Lot 28 of partition 'between the Derouen heirs recorded in conveyance Book 52, at folio 512.
“Being the same property acquired by Gilbert Derouen from Victoria D. Migues by act recorded in Conveyance Book 113, at folio 51.” (Tr. 62) (Emphasis added.) [Obviously in the sale by Gilbert Derouen to Adonis Derouen Lot 28 (area RSTU) was mistakenly described as 12 acres rather than 12 arpents; see note 3, supra.]

. On March 3, 1952 Wallace Romero sold exactly one half (or the northern portion, which is designated as ABNO) of this property to Earl Justin Trimble and Ethel T. Trimble (Tr. 4). The Trimbles in turn sold this land to George Trappey Sr. and George Trappey, Jr. on February 6, 1903 (Tr. 13). It is interesting to note that tbe Trappeys now own the land north of defendant and the land south of plaintiff.